1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10                                   )
                                     )
11                                   )
                                     )
12   SUSAN SCHOFIELD,                 )
                                     )        2:06-cv-117-GEB-GGH
13                   Plaintiff,       )
                                     )
14        v.                          )        ORDER*
                                     )
15   METROPOLITAN LIFE INSURANCE      )
     COMPANY; KAISER FOUNDATION HEALTH )
16   PLAN, INC.; and KAISER PERMANENTE )
     FLEXIBLE BENEFITS PLAN,          )
17                                   )
                     Defendants.      )
18   _____)

19

20        Pending are cross motions for summary judgment.

                              BACKGROUND
21
          Plaintiff worked as a Certified Registered Nurse
22
     Anaesthetist ("CRNA") at Kaiser for 22 years.  (Pl.'s Statement of
23
     Undisputed Facts ("Pl.'s SUF") ¶ 1.)  In 1999, Plaintiff began seeking
24
     treatment for fibromyalgia and pain.  (Id. ¶¶ 14, 22.)  Plaintiff's
25
     physician, Dr. Heykes, diagnosed her with "fibromyalgia [and] some
26

27   _____

28        *    This matter was determined to be suitable for decision without
     oral argument.  L.R. 78-230(h).

                                      1

1  degree of depression and chronic fatigue."  (Admin. R. 342.)

2  Plaintiff began Ibuprofen treatment for the pain and Dr. Heykes noted

3  it "did a fairly good job on pain control."  (Id. at 127.)  Dr. Heykes

4  also "recommended a regular exercise program with Motrin and

5  antidepressant medication."  (Id. at 128.)

6          Plaintiff is covered by a Long Term Disability Plan ("Plan")

7  whereby participants are entitled to benefits if they become disabled.

8  (Defs.' Statement of Undisputed Facts ("Defs.' SUF") ¶ 2.)  The Plan

9  grants Defendant Metropolitan Life full discretion to interpret the

10 terms of the Plan, construe Plan documents, and determine eligibility

11 for Plan benefits in accordance with the terms of the Plan.  (Id.

12 ¶¶ 5, 6; Pl.'s SUF ¶ 35.)

13         Plaintiff began short term disability leave on March 24,

14 2001.  (Pl.'s SUF ¶ 3.)  Dr. Heykes completed a Disability Status Form

15 extending Plaintiff's request for disability leave in September

16 of 2001.  (Admin. R. at 342.)  At that time, he only recommended

17 Plaintiff be absent from work for the remainder of the month.  (Id.)

18 Dr. Heykes had not seen Plaintiff since May 2001.  (Id.)

19 Nevertheless, on September 6, 2001, Plaintiff filed a claim for long

20 term disability benefits under the Plan.  (Defs.' SUF ¶ 12; Pl.'s SUF

21 ¶ 21.)

22         Subsequently, Defendants had two independent reviews

23 performed of Plaintiff's medical file.  (Id. at 284.)  Dr. Smith, one

24 of the independent reviewers, noted "the medical records support the

25 above diagnoses [of fibromyalgia, chronic fatigue, and depression],"

26 but concluded Plaintiff was "able to work within the restrictions

27 outlined."  (Id. at 128-129.)  Dr. Moyer, the other independent

28 reviewer, noted there was nothing in the record that "would preclude a

2

1   return to [Plaintiff's] regular occupation."  (Id. at 284.)  On

2   January 14, 2002, Defendants denied Plaintiff's claim for benefits.

3   (Pl.'s SUF ¶ 47.)  Plaintiff filed an appeal and on April 18, 2002,

4   Defendants sent a final denial letter to Plaintiff.  (Id. ¶¶ 64, 88.)

5

6                              DISCUSSION

7   I. Summary Judgment Motion[1]

8        A. Standard of Review

9        Plaintiff argues Defendants' denial of benefits should be

10  reviewed de novo because Defendants have a conflict of interest.

11  (Pl.'s Reply at 13.)  Defendants rejoin the decision must be reviewed

12  for an abuse of discretion because the Plan provides Defendants "sole

13  and full discretionary authority."  (Defs.' Opp'n at 4.)

14        When an insurer "acts as both the plan administrator and the

15  funding source for benefits [it] operates under what may be termed a

16  structural conflict of interest."  Abatie v. Alta Health & Life Ins.

17  Co., 458 F.3d 955, 965 (9th Cir. 2006).  However, when "the plan *does*

18  confer discretionary authority . . . then the standard of review

19  shifts to abuse of discretion."  Id. at 963 (emphasis in original).

20  Although the parties agree there is a structural conflict of interest,

21  that alone does not require a de novo review of Defendants' decision.

22  Id. at 967.

23        Both parties agree the Plan specifies the "Plan

24  administrator and other Plan fiduciaries" have "discretionary

25  authority to interpret the terms of the Plan and to determine

26  eligibility for and eligibility to Plan benefits in accordance with

27  _____

28        [1]   The standards applicable to motions for summary judgment are
    well known and need not be repeated here.

                                 3

1  the terms of the Plan."  (Pl.'s SUF ¶ 35; Defs.' SUF ¶ 5.)  However,

2  Plaintiff contends a genuine issue of material fact exists concerning

3  whether "the reservation in the MetLife Policy and Plan document

4  controls here versus the SPD, which has no such reservation."[2]  (Pl.'s

5  Opp'n at 11.)  Plaintiff argues she was given a copy of the SPD but

6  not the Plan, and therefore, the terms of the Plan do not control.

7  (Id.)  However, the SPD specifically states in the introduction that

8  "[i]n case of any omission or conflict between what is written in this

9  book and in the [P]lan documents, insurance contracts, and service

10  agreements, the [P]lan documents, contract or agreement always

11  govern."  (Admin. R. 607.)  Therefore, the terms of the Plan are

12  controlling.  Since Plaintiff does not dispute that the Plan

13  unambiguously reserves full discretion for the Plan administrator, the

14  applicable standard of review is abuse of discretion.

15              i. Effect of Structural Conflict of Interest

16          Plaintiff argues very little weight should be given to

17  Defendants' determination that Plaintiff was not entitled to benefits

18  under the Plan because of the structural conflict of interest.  (Pl.'s

19  Reply at 16.)  Defendants contend "the Court should afford a high

20  degree of deference" to the determination.  (Defs.' Mot. for Summ. J.

21  ("Defs.' Mot.") at 15.)

22          Abatie discussed the level of deference that should be

23  accorded the Plan administrator's decision:

24          A district court, when faced with all the facts
            and circumstances, must decide in each case how
25          much or how little to credit the plan
            administrator's reasons for denying insurance
26

27
        [2]      It is unclear what "SPD" refers to.  Plaintiff's cite to the
28  Administrative Record leads to a document entitled "Benefits By Design."
    (Admin. R. at 605-661.)

1      coverage . . . .  The level of skepticism with
       which a court views a conflicted administrator's
2      decision may be low if a structural conflict of
       interest is unaccompanied, for example, by any
3      evidence of malice, of self-dealing, or of a
       parsimonious claims-granting history.  A court may
4      weigh a conflict more heavily if, for example, the
       administrator provides inconsistent reasons for
5      denial, fails adequately to investigate a claim or
       ask the plaintiff for necessary evidence, fails to
6      credit a claimant's reliable evidence, or has
       repeatedly denied benefits to deserving
7      participants by interpreting plan terms
       incorrectly or by making decisions against the
8      weight of evidence in the record.

9  Abatie, 458 F.3d at 968-969.

10          Plaintiff produced no evidence of malice, self-dealing,

11  inconsistent reasons for denial, or a parsimonious claims-granting

12  history by Defendants.  Plaintiff asserts Defendants failed to

13  adequately investigate her claim because Defendants "took 44 days to

14  order any of [Plaintiff's] medical records, and then only ordered and

15  obtained 9 illegible pages of [Plaintiff's] large chart" and "made

16  only one attempt to call [Plaintiff's] Kaiser PCP, and never called

17  back."  (Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 5.)  However,

18  Defendants requested complete medical records from Plaintiff's

19  treating physician and reviewed all documentation Plaintiff submitted

20  for her claim.  (Admin. R. 117, 119, 122.)  In addition, the Plan

21  specifies it is the employee's burden to submit "Proof of Disability"

22  along with a claim for benefits.  (Id. at 69.)  Since Plaintiff was

23  required to submit proof of her disability and Defendants attempted to

24  obtain Plaintiff's complete medical history, Plaintiff has not shown

25  that Defendants failed to adequately investigate her claim.  See

26  Bratton v. Metropolitan Life Ins. Co., 439 F. Supp. 2d 1039, 1047

27  (C.D. Cal. 2006) (stating it is the plaintiff's burden to "come

28  forward with material, probative evidence" defendants' breached a

1   fiduciary obligation in order to alter the deference afforded

2   defendants' decision).

3          Nor has Plaintiff shown that Defendants failed to credit

4   Plaintiff's reliable evidence.  Both independent reviewers concluded,

5   based on a review of Plaintiff's medical records, that Plaintiff's

6   "medical records support the above diagnoses as well as the major

7   depression."  (Id. at 128.)  Therefore, Plaintiff has not shown

8   Defendants' failed to credit Plaintiff's reliable evidence.

9          Plaintiff has failed to present evidence that Defendants'

10   decision should not be given a high degree of deference.  Defendants'

11   decision will be reviewed for an abuse of discretion.

12          ii. Procedural Violations

13          Plaintiff contends the standard of review should shift to de

14   novo because of Defendants' "flagrant violations" including

15   Defendants' failure to apply the "80% of earnings test" required under

16   the Plan.  (Pl.'s Reply at 14.)  Defendants do not assert they applied

17   the "80% of earnings test."

18          Abatie explained that when "an administrator engages in

19   wholesale and flagrant violations of the procedural requirements of

20   ERISA . . . we review de novo the administrator's decision to deny

21   benefits."  458 F.3d at 971.  Plaintiff argues that failing to apply

22   the "80% of earnings" test rises to the level of a wholesale and

23   flagrant violation.  (Pl.'s Reply at 14.)  However, since Defendants

24   determined Plaintiff could continue working at her prior job at

25   Kaiser, there was no need for Defendants to determine whether

26   Plaintiff could make more than 80% of her previous salary.  Under

27   Defendants' determination, Plaintiff could make 100% of her previous

28   salary because she would be performing the exact job she had before

6

1  submitting her claim for benefits.  Therefore, Defendants' failure to

2  apply the "80% of earnings" test was not a flagrant violation of

3  procedural requirements that would justify a de novo standard of

4  review.

5          B. Reviewing Defendants' Determination

6               i. Medical Reports

7          Plaintiff argues the reports of Defendants' independent

8  reviewers should not be considered for this motion because they

9  constitute hearsay.  (Pl.'s Opp'n at 9.)  Defendants rejoin the

10  reports are part of the administrative record and therefore, were

11  "properly considered by [Defendants] in making its determination, and

12  are properly considered by this Court in determining whether the

13  denial of Plan benefits was arbitrary and capricious."  (Defs.' Reply

14  at 6.)

15          When a district court reviews a plan administrator's

16  decision for abuse of discretion, the court's decision "must rest on

17  the administrative record."  Abatie, 458 F.3d at 970; see also Urbania

18  v. Cent. States, Se. & Sw. Areas Pension Fund, 421 F.3d 580, 586 (7th

19  Cir. 2005) (noting that "[d]eferential review of an administrative

20  decision means review on the administrative record" (internal

21  quotation marks omitted); Kosiba v. Merck & Co., 384 F.3d 58, 67 n.5

22  (3rd Cir. 2004) (noting that, "in general, the record for

23  arbitrary-and-capricious review of ERISA benefits denial is the record

24  made before the plan administrator"); Zervos v. Verizon N.Y.,

25  Inc., 252 F.3d 163, 173 (2d Cir. 2001) (noting that when review is for

26  abuse of discretion, the record consists of the administrative

27  record).  Since the medical reports are part of the administrative

28  record, they are considered.

1                          ii.  Defendants' Conclusion

2            Plaintiff argues Defendants' decision to deny benefits was

3   an abuse of discretion.  (Pl.'s Reply at 17.)  Defendants rejoin it

4   was not an abuse of discretion to credit the opinions of the two

5   independent reviewing physicians.  (Defs.' Reply at 6.)

6            Plaintiff's supervisor at Kaiser filled out a Supervisor

7   Statement describing the specific activities required of Plaintiff as

8   a CRNA at Kaiser.  (Admin. R. 340.)  Based on this description of

9   Plaintiff's job, Dr. Smith concluded Plaintiff was "able to work

10  within the restrictions outlined."  (Id. at 129.)  In addition, Dr.

11  Moyer concluded the medical records did not reflect a disability that

12  would "prevent her from returning to her previous occupation."  (Id.

13  at 284.)  Based on the analysis of the independent reviewers,

14  Defendants concluded that despite the diagnosis of fatigue and

15  fibromyalgia, "the records did not document disabling pain" and

16  therefore, "[t]he file did not contain medical evidence to support the

17  presence of limitations of such severity that they precluded

18  [Plaintiff] from performing the duties [of] her Own Occupation."  (Id.

19  at 124-125, 134.)

20           Defendants were faced with conflicting determinations about

21  Plaintiff's ability to return to her job at Kaiser.  Plaintiff has not

22  shown it was an abuse of discretion for Defendants to credit the

23  conclusion of the two independent medical reviewers.

24  /////

25  /////

26  /////

27  /////

28  /////

1                                      CONCLUSION

2              Defendants' motion for summary judgment on all claims is

3      granted.   Plaintiff's motion is denied.   The clerk is directed to

4      enter judgment for Defendants.

5              IT IS SO ORDERED.

6      Dated:   November 17, 2006

7

8                                      _____
                                       GARLAND E. BURRELL, JR.
9                                      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28